# CURRENT OHIO COURT of APPEALS CASES
## Weekly Advance Abstract Opinions

## EPITOMIZED OPINIONS
### Published only in the Abstract

### AULT v. HALL.

Ohio Appeals, 8th Dist., Cuyahoga Co.

Syllabus by Editorial Staff.

**TRIAL.**

(590 E3g) Charge that if, under evidence, surgeon had right to rely upon sponge count of nurse, and if surgeons are accustomed to rely upon such count, verdict should be for defendant, held not erroneous.

**PHYSICIANS AND SURGEONS.**

(430 M) Universal custom, with respect to wiping sponges, is that they are not intended to be left in body and therefore no reason for attaching forceps or hemostat.

**PHYSICIANS AND SURGEONS.**

(430 M) Rules and customs of modern surgery must be taken into consideration in malpractice cases, and courts and juries are bound to follow rule of law laid down as to custom and usage.

**NEGLIGENCE.**

(370 R2) Doctrine of respondeat superior held not to apply so as to hold surgeon liable for negligence of nurses and assistants.

Error to Common Pleas.

DeKaiser & Harrison, Cleveland, for Ault.

Dustin, McKeehan, Merrick, Arter & Stewart, Cleveland, for Hall.,

### STATEMENT OF FACTS.

This is a proceeding in error where it is sought to reverse a judgment which was rendered in favor of Charles A. Hall, a practicing physician of long standing. The suit is founded upon a charge of malpractice in the professional treatment of Sophronia Ault, the plaintiff in error, upon whom was performed, by defendant in error, an operation for the removal of the gall bladder, and it appears that after the completion of the operation, what is known as a wiping sponge was left in the abdomen of plaintiff in error.

There are three grounds of error, to-wit:

The charge of the court with respect to the question of the usual custom.

The refusal to give special charges requested by the plaintiff.

The verdict and judgment are clearly and manifestly against the weight of the evidence.

The case went to trial upon the second amended petition which pleaded that the defendant, the surgeon, had entered into a contract to perform the operation for the removal of the gall bladder, in accordance with the rules of efficient medical practice in surgery cases and that under the agreement, the plaintiff entered the hospital, was operated upon and that she was damaged to her injury because of the failure to remove the sponge at the completion of the operation, and it is charged that by reason thereof it became necessary for her to return to the hospital, and remain some three weeks before the injury caused by the presence of the sponge, was remedied, or partially so.

The answer admits the contract for professional services but denies any negligence and pleads in defense that the operation was performed in accordance with the general custom relating to surgical practice in such cases, and further alleges that as to the surgical attendants and trained nurses, it is the general custom in this locality, for the surgeon to enlist the hospital staff present, in assisting him in the operation and it is specifically alleged that it is the general custom for one of the hospital staff, known as a sponge nurse, to have the responsibility of counting the sponges and performing all duties in relation thereto, excepting those duties which were necessary to be performed by the surgeon in the actual operation, and it is alleged that this person, known as the sponge nurse, was present and performed her duties in that behalf, and that at the completion of the operation that this nurse, so enjoined with these duties, reported to the defendant that the sponges used in the operation were accounted for and that the defendant relied upon such count, as it was necessary and customary in accordance with the best medical and surgical practice, and there was a further denial that the hospital staff who assisted in the operation, were the agents and servants of defendant. Upon these issues thus raised, the case went to trial and as noted, there was a verdict and judgment for defendant, and hence these proceedings in error.

SULLIVAN, PJ.

From the excerpts noted, and the allegations of the petition itself, it is clear that the petition is planted on the authority of Gillette v. Tucker, 67 OS. 106.

Additional authorities showing this rule in Ohio are Palmer v. Humiston, 87 OS. 401; Hier v. Stites, 91 OS. 127; Bowers v. Santee, 99 OS. 361 and Railroad v. Potter, 113 OS. 591, 597.

Under allegations of this character there is evidence throughout the record, of a professional and expert nature, that the operation was performed by the defendant with the exercise of that average degree of skill, care and diligence practiced by the members of the surgical profession in this locality and in the light of medical and surgical science of the present day.

Specifically significant in the record is testimony from one of the attendants that the defendant himself exercised the precaution of interrogating the nurse whose duty it was to keep track of and count the sponges, as to whether she had performed her duty and the answer was in the affirmative.

Now, with the allegations of the petition planted upon the law of Ohio, as to the lia-

bility of a surgeon, and the evidence as above noted, and both bearing upon the question of custom, practice and skill, as laid down in the authorities cited, the Court, at the conclusion of the evidence, and over the objection of plaintiff, gave a special charge, as to which error is charged, which reads as follows:

"4. The Court says to you as a matter of law, that if under the evidence in this case, Dr. Hall had a right to rely upon the count of the sponge nurse who was in the employ of St. John's Hospital, and if surgeons practicing in this vicinity in the technical routine of an operation of this character, are accustomed to rely upon the count of the sponge nurse then the Court says to you as a matter of law that your verdict herein should be in favor of the defendant, Dr. Hall."

It is claimed that the error prejudicial to plaintiff, lurking in this charge, is that there is no reference to the question as to whether the nurse actually did count the sponges, or that she did report to defendant, or that defendant relied upon her count. It is claimed that the jury was arbitrarily instructed that they had a right to rely upon the sponge count, if that was the custom, regardless of whether there was a count or a report in reference thereto, or a reliance thereon.

Now, as bearing upon the correctness of this charge, we examined the record and we find testimony that it was not only the custom to depend upon the proper attendants to count the sponges, but that in addition thereto the defendant went further than the custom in such cases required, and propounded the interrogatory as to the presence of any sponges in the wound.

This evidence, in our judgment, removes the objections to the instruction complained of, that it should have been incorporated therein that the nurse counted the sponges, reported the same and that the defendant relied upon her count, because the phrase, "under the evidence in this case" incorporated in law the evidence above quoted, and that is to the effect that the nurse represented that the sponges were counted, that she reported the same, and that the defendant relied upon her affirmative answer in addition to depending upon the specific duties which applied, under the expert testimony of the record, to the counting nurse. Therefore, the instruction was given with a full knowledge that the jury, in interpreting the law from the bench, would be expected to connect with the instructions the evidence to which they had already listened and which was part of the record in the case. The court had a perfect right to rely upon the presumption that the jury remembered the evidence above quoted and that the instruction was given in connection with that evidence and that they were to exercise their intelligence with respect to the evidence, that the light of the instructions shed upon it.

It must be noted that the charge itself conformed to the law in Ohio as laid down in the Gillette case and other cases of a similar nature noted, with respect to the question of custom.

It is further claimed that there is error in the instructions in question, because one of the specifications of negligence in the second amended petition is that there were no forceps or hemostat attached to the end of the particular sponge which was left in the abdomen at the close of the operation.

There is credible evidence in the record to support the views apparently taken by the court and jury that in an operation of the character in question, that numerous kinds of sponges are used. It seems to be admitted by the evidence, that the particular sponge under discussion was what is known as a wiping sponge, and with respect to sponges of this character it was not the custom to attach a hemostat or a forceps, because there was no intention, necessity, or reason for the leaving of such a sponge in the abdomen, and hence no necessity for an attachment.

The very basis of the suit is the negligence arising from leaving the sponge in the body, and therefore to recover, malpractice would have to be shown, because it was inadvertently and negligently left in the body and against the usual practice and custom and not that it was left there with the intention that it should remain.

In the final analysis of this particular feature of the case, it is clear that to argue that there should be a hemostat attached to the wiping sponge, does violence to the structure of plaintiff's claim of negligence. If the Gillette case supra is the law of Ohio, then the universal custom under the record in this case, with respect to wiping sponges, is that they are not intended to be left in the body and therefore no reason for the use of a hemostat.

A further claim of error with respect to the instructions under discussion, is that it was erroneous because it held that the compliance with the custom or relying upon the nurse's sponge count, is conclusive evidence of lack of negligence on the part of defendant.

Even if the authorities such as 21 Ruling Case Law 388; Davis v. Kerr, 239 Pa. 351; Paro v. Carter, 177 Wis. 121; Walker v. Holbrook, 130 Minn. 106; Barnett's Admr. v. Brand, 165 Ky., 616; Spears v. McKinnon 270 S.W. 524 Ark., are correct views of the law, it is our judgment that the record shows by indisputable testimony that defendant did not rely alone upon the nurse's answer, as to the sponges, but made an inquiry which was professionally gratuitous as far as the general custom in such cases was concerned.

However, in the absence of such additional action on the part of the defendant in reference to the sponges, we cannot select the authorities above noted, that the responsibility and liability of the surgeon is broader than mere custom as against the unquestioned authority of our own Supreme Court as laid down in the Gillette case supra, and the other cases of similar nature cited herein. The rules and practice of modern surgery must be taken into consideration in cases like the one at bar, and courts and juries are bound to follow the rule of law laid down as to custom and usage.

Holding these views we are of the opinion that the instructions under discussion were not erroneous.

We now come to the assignment of error in the court refusing certain special requests before argument, offered by the plaintiff.

The charge first refused is known as No. 2, and it is claimed by counsel for plaintiff in error that this charge is almost verbatim from the opinion of the court in the case of Palmer v. Humiston, 87 OS. 406, which we have noted above in this opinion. It must be noted that there is a distinction between the case at bar and the Palmer case supra. The doctrine of compliance with usage and custom in surgery cases was not pleaded and as a defense was not involved in the case. In the present case the structure is local custom and in the answer

to the second amended petition as we have noted above, a full defense is alleged, implying full and faithful obedience to common practice and usage.

Exceptions were taken to the court's refusal to give what is known as plaintiff's fifth request, which is as follows:

"If you find by a preponderance of the evidence in this case that the defendant contracted to perform an abdominal operation upon the plaintiff * * * and that the defendant selected certain persons to assist him in performing said operation, and delegated to them a certain portion of the duties involved in said operation, and said persons throughout said operation were wholly subject to the orders, directions and control of defendant in every particular and detail of the work so delegated to them, said assistants were, for the period of said operation, the servants of the defendant; and this is true irrespective of whether or not they, or any of them, were in the general employ of the hospital where the operation was being carried on. And if you further find that the plaintiff has sustained injury, as alleged in her petition, directly by reason of any negligence of the defendant himself or by reason of any negligence of one or more of said servants, in the performance of the duties so delegated to them, as set forth in the petition, your verdict must be for the plaintiff."

We do not think from a perusal of the evidence, that there is any basis for the claim that there was any such relationship as master and servant, employer and employee, or principal and agent, between the defendant and the attendants known as the hospital staff, which assisted him in the operation, and it is clear that without credible evidence of that nature there is no basis for the charge and simply because the master surgeon directed movements or made suggestions, or that the assistants were obedient to his call during any emergency or stage of the operation, does not create the doctrine of *respondeat superior*. Hence, it is our judgment that there is no error in this respect.

Thus holding, the judgment of the court of common pleas is hereby affirmed.

(Vickery and Levine, JJ., concur.)