**GREEN TREE ACCEPTANCE, INC., Appellant,**

v.

**John W. WHEELER, Appellee.**

No. 87–5060.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 3, 1987.

Decided Oct. 27, 1987.

Peter S. Hendrixson, Minneapolis, Minn., for appellant.

Duane W. Krohnke, Minneapolis, Minn., for appellee.

Before HEANEY and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Green Tree Acceptance, Inc. (Green Tree), a Minnesota corporation, brought this diversity action seeking to enforce a noncompetition agreement against a former executive, John W. Wheeler. The jury found that the noncompetition agreement had terminated. The district court entered judgment on the verdict and denied Green Tree's motion for a new trial or judgment n.o.v. Green Tree appeals. We reverse and remand for a new trial.

Green Tree's primary business is mobile home financing. Green Tree made its first public stock offering in May 1983. Participating underwriters recommended that Green Tree execute employment contracts and noncompetition agreements with key executives to protect the company and prospective stockholders. Wheeler was an executive vice president and member of Green Tree's board of directors. Wheeler had joined the company in 1977 as a regional manager in Green Tree's Michigan office and had advanced rapidly through the ranks. In 1983, Wheeler held the second highest position in the company, reporting

only to the president and chief executive officer, Larry Cross. Wheeler was responsible for day-to-day operations and developed Green Tree's underwriting and pricing policies. He had access to confidential information, such as Green Tree's three-year strategic plan.

Wheeler signed an employment contract and a noncompetition agreement on March 24, 1983, receiving in return $249,546.85 cash and $218,040.00 worth of stock. The employment contract provided that Wheeler would be employed as an executive vice president until December 31, 1985. The relevant portions of the noncompetition agreement read as follows:

THIS NONCOMPETITION AGREEMENT, dated March 24, 1983 (the "Agreement"), by and among GREEN TREE ACCEPTANCE, INC., a Minnesota corporation (the "Company"), MIDWEST FEDERAL SAVINGS AND LOAN ASSOCIATION OF MINNEAPOLIS, a federally chartered savings and loan association, and GT HOLDINGS, INC., a Minnesota corporation wholly owned by Midwest Federal, (collectively, the "Parent Company"), and John W. Wheeler, a resident of Minnesota (the "Executive")

\*   \*   \*   \*   \*   \*

ARTICLE III *Termination*

This Agreement will terminate five years from the date of the Employment Agreement or two years from the date of termination of the Executive's employment with the Company, whichever first occurs, unless it is revoked by the Executive pursuant to Article V of the Employment Agreement, *except that those obligations of the Executive to the Parent Company under this Agreement will terminate in the event that either the Parent Company or a subsidiary of the Parent Company owns less than 50% of the outstanding Common Stock of the Company.* (emphasis added)

In May 1985, Midwest Federal and GT Holdings sold some of their Green Tree stock, reducing their holdings to less than fifty percent of Green Tree's outstanding common stock.

Earlier, in October 1984, a disagreement between Wheeler and Cross led to a mutual agreement that Wheeler would resign. Green Tree compensated Wheeler through December 1985, fulfilling its obligations under the employment contract. In May 1986, Wheeler accepted a position as president and chief executive officer of Security Pacific Housing Services, Inc., a competitor of Green Tree in the business of financing mobile homes. Green Tree thereupon sued Wheeler for breach of the noncompetition agreement.

Wheeler raised the defenses of waiver, release, laches, and estoppel. He also asserted that the noncompetition agreement had terminated, construing the above-quoted provisions of the agreement to mean that his obligations not to compete with Green Tree ceased in May 1985 as a result of the sale of Green Tree stock by Midwest Federal and GT Holdings.

Green Tree filed a motion in limine to strike Wheeler's affirmative defense that the noncompetition agreement had terminated. Green Tree asked the trial court to rule as a matter of law that the contract was unambiguous and that Wheeler's obligations to Green Tree continued. The court denied this motion, as well as Green Tree's motion for a directed verdict on this issue.

On appeal, Green Tree contends that the district court erred in permitting the jury to interpret and apply an unambiguous written contract. We agree.

Under Minnesota law, the court must make the initial determination as to whether a contract is ambiguous. *Otten v. Stonewall Ins. Co.*, 511 F.2d 143, 147 (8th Cir.1975); *Matter of Turner Crossroads Dev. Co.*, 277 N.W.2d 364, 369 (Minn.1979). The construction of an unambiguous writing is a matter of law for the court, not a question of fact for the jury. *Vagle v. Pickands Mather & Co.*, 611 F.2d 1212, 1220 (8th Cir.1979), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 704, 62 L.Ed.2d 669 (1980). A contract is ambiguous if it is reasonably susceptible to more than one interpretation. *Midwest Communications v. Minnesota*

*Twins, Inc.,* 779 F.2d 444, 455 (8th Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986). Because a district court's determination of whether an ambiguity exists is a question of law, it is reviewed *de novo* on appeal. *Id.*

■ Although Wheeler has advanced some ingenious readings of the noncompetition agreement in an attempt to support his contention that the provisions in question are ambiguous, we conclude that the noncompetition agreement is reasonably susceptible of only one interpretation: that Wheeler's obligations not to compete with Green Tree continued beyond the date on which the ownership of Green Tree's common stock by Midwest Federal and GT Holdings fell below fifty percent. The trial court therefore erred in ruling that the agreement was ambiguous and in submitting it to the jury for interpretation.

Wheeler argues that even if the district court improperly submitted the agreement to the jury, Green Tree failed to preserve the issue for appeal by not objecting to the form of the special verdict. When the court and the parties met to formulate the special verdict form, Wheeler proposed a form with separate questions for each of his affirmative defenses; the trial court proposed a draft that did not identify each affirmative defense. Wheeler's counsel objected, but Green Tree's counsel made no comment.

The court submitted the following special verdict question:

1. Was the noncompetition agreement between Green Tree Acceptance, Inc. and John W. Wheeler in effect in 1986?

The jury answered "no."

■ Special verdicts are discretionary with the trial court. *Mueller v. Hubbard Milling Co.,* 573 F.2d 1029, 1038 n. 13 (8th Cir.), *cert. denied,* 439 U.S. 865, 99 S.Ct. 189, 58 L.Ed.2d 174 (1978). Under Fed.R. Civ.P. 49(a), a party waives his right to a jury determination on an issue of fact if he does not lodge a specific objection with respect to an issue omitted from a special verdict. *Rose Confections, Inc. v. Ambrosia Chocolate Co.,* 816 F.2d 381, 389 (8th Cir.1987); *Bell v. Mickelsen,* 710 F.2d 611, 616 (10th Cir.1983). This case, however, involves the improper submission to the jury of a question of law. When a ground for the verdict should have been decided as a matter of law, reversal and a new trial are required in spite of the presence of other grounds to support the verdict. *E.I. du Pont de Nemours & Co. v. Berkley & Co., Inc.,* 620 F.2d 1247, 1257 (8th Cir. 1980); *Bone v. Refco, Inc.,* 774 F.2d 235, 242 (8th Cir.1985); *Morrissey v. Nat'l Maritime Union,* 544 F.2d 19, 26 (2d Cir.1976). It is impossible, of course, to determine in the present case whether the jury's answer was based on the defense of waiver, release, or estoppel, or on the jury's interpretation of Article III of the noncompetition agreement.

■ Although Green Tree did not object to the special verdict form, it specifically requested an instruction that the contract was not ambiguous and that the noncompetition agreement had not terminated.[1] The court rejected Green Tree's proposed jury instruction. It would not be fair to place the burden on Green Tree to formulate a special verdict form that isolated the issue of law that the court improperly submitted to the jury.

Because we cannot be confident that the jury verdict was not tainted by the erroneous and prejudicial submission of an unambiguous contract for jury interpretation, we reverse and remand for a new trial.

---

1. Green Tree's proposed jury instruction No. 10 provided:

> I instruct you that defendant Wheeler's Noncompetition Agreement with Green Tree did not terminate when the ownership in Green Tree of Midwest Federal and GT Holdings, Inc. fell below 50% in 1985. The Noncompetition Agreement between Wheeler and Green Tree remained effective after that date.